Opinion issued August 3, 2021



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-19-00785-CV

—————————————

**ROGELIO CASTRO ROMERO, Appellant**

**V.**

**VICKIE CASTRO, Appellee**

---

**On Appeal from the 393rd District Court**
**Denton County, Texas**
**Trial Court Case No. 18-1749-393**

---

## MEMORANDUM OPINION

Appellant Rogelio Castro Romero appeals the trial court's final decree of

divorce awarding appellee Vickie Castro spousal maintenance. In one issue, Romero

contends the trial court erred in awarding Castro spousal maintenance under Section 8.051(2)(A) of the Texas Family Code.[1]

We affirm.

## Background

Romero and Castro were married in April 2014 and separated in September 2016. Romero filed for divorce in 2018. Castro answered, filed a counter-petition for divorce, and requested spousal maintenance due to an ongoing disability.

At the hearing on the parties' petitions for divorce, three witnesses testified: Romero, Castro, and Castro's mother Jenny Cummings. On the issue of her request for spousal maintenance due to a disability, Castro testified that she fell down the stairs on April 19, 2016. Romero did not immediately take her to the hospital for medical attention, but instead waited until April 22, 2016, three days later. In contrast, Romero testified that the accident happened in the evening, and that immediately after the accident Castro said she was fine and went to sleep. He testified that after he went to work the next day, Castro called him and said she was not feeling well. He left work and took her to the hospital.

---

[1] Pursuant to its docket-equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 19-9091 (Tex. Oct. 1, 2019); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We researched relevant case law and did not locate any conflict between the precedent of the Court of Appeals for the Second District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Castro testified that, as a result of the fall, she lost her vision for five days and experienced seizures and memory loss. She was admitted to Harris Methodist Hospital, where she was diagnosed with a traumatic brain injury ("TBI") with severe memory loss. Castro stayed in the hospital for several days. She takes a number of medications as a result of her accident, including Seroquel, Propranolol, Paxil, Dexilant, Sumatriptan, and a blood pressure medication, all of which were prescribed by her neurologist.

Castro testified that she has trouble forming words, "struggle[s] with some words and the understanding . . . processes of things," still has "issues" with her vision, and only recently began to get some of her memories back and taught herself how to read. Castro admitted that she was able to drive a car and do math with a calculator, and that her short-term memory was "[b]etter than it used to be." Castro also admitted that she became pregnant at the end of 2016 into 2017, but that she did not know if the father was Romero or another man named Chauncey Friend. Castro testified that Friend "pulled a gun" on her and "pulled the trigger trying to kill [her.]" But "[w]hen the gun did not fire," Friend hit her over the head with it. Friend was arrested and is currently serving a six-year sentence for this incident.

Castro testified that, at the time of the hearing, she was unable to get a job because she had not been "released to go to work yet" by her family doctor. Castro testified that "if [she] could work, [she] wouldn't ask for anything." But she was

"not to the point yet that [she] can go get a job . . . , even though . . . [she] would love to because [she] can't live on what [she] make[s]." Castro testified that she receives Social Security disability benefits payments.

Castro's mother, Jenny Cummings, testified that Castro was on several medications following the accident that she believes affect Castro's demeanor and make Castro "volatile." Cummings testified that Castro still suffers from seizures and that the medications Castro takes cause "tremendous headaches." She further testified that Castro is "gaining ground" but is not "back where [she] need[s] to be." Cummings testified that she has seen Castro searching online for jobs, and that Castro applied for but did not get one job in particular because the medications she was taking showed up on the drug test. She further testified that Castro "can't get a job because nobody will hire [her] because of the medication . . . because [she] get[s] these tremendous headaches."

At the conclusion of the hearing, the trial court granted the divorce, and awarded each party their tangible personal property in their possession. The trial court found that Castro was disabled, that she was disabled during the course of the marriage, and that she therefore qualified for spousal maintenance under Section 8.051(2)(A) of the Texas Family Code. In support of its decision to award spousal maintenance, the trial court relied on the evidence that Castro receives Social Security disability payments, as well as the testimony from Castro and Cummings.

On June 14, 2019, the trial court entered the final decree of divorce, which included the following provision for spousal maintenance:

> The Court finds that VICKIE CASTRO ROMERO is eligible to receive maintenance pursuant to Section 8.051(2)(A) of the Texas Family Code. IT IS ORDERED that ROGELIO CASTRO ROMERO shall pay as maintenance to VICKIE CASTRO ROMERO $567.00 per month . . . until the earliest occurrence of one of the following events . . . an order of the court following an annual review, at the request of the Court or Motion by either party, which may be conducted in May of each year, to determine whether or not VICKIE CASTRO ROMERO has made reasonable efforts to obtain employment, and whether the disability is ongoing.

Romero moved for a new trial on July 12, 2019, asserting there was insufficient evidence presented at the hearing to support a finding that Castro was entitled to spousal maintenance. The motion for new trial was overruled by operation of law, and Romero appealed.[2]

## Spousal Maintenance

In his sole issue on appeal, Romero argues that the trial court erred in awarding Castro spousal maintenance because Castro "did not meet the specific eligibility requirements that [her] physical or mental disability was incapacitating."[3]

---

[2] Romero's notice of appeal was filed on September 13, 2019, one day after it was due. TEX. R. APP. P. 26.1(a)(1). Romero moved for an extension of time to file the notice of appeal, which the Court of Appeals for the Second District granted, making his September 13 notice of appeal timely.

[3] Castro did not file an appellate brief. She did, however, file a letter dated April 13, 2021, the date of submission of this appeal, in which she argued that this appeal should be denied because her testimony alone was enough to support the trial court's finding on spousal maintenance. Because Castro did not file this letter or an

5

## A.      Standard of Review

A trial court's award of spousal maintenance is subject to an abuse-of-discretion review. *Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort Worth 2008, pet. denied); *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied). The trial court may exercise its discretion to award spousal maintenance if the party seeking maintenance meets specific eligibility requirements. *Brooks*, 257 S.W.3d at 425; *Pickens*, 62 S.W.3d at 214–15. Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Brooks*, 257 S.W.3d at 425; *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Pickens*, 62 S.W.3d at 214.

## B.      Analysis

The trial court awarded Castro spousal support based on Texas Family Code Section 8.051, which allows a spouse in a divorce proceeding to seek spousal maintenance if that spouse lacks sufficient property to meet minimum reasonable needs and cannot support herself due to an incapacitating physical or mental disability. TEX. FAM. CODE § 8.051(2)(A). As noted above, Romero argues that

---

appellee's brief by the deadline and did not move for an extension of time in which to file a brief, despite notice from this Court to do so, we do not consider her letter in our analysis.

6

under Section 8.051(2)(A), only "incapacitating" disabilities that cause a spouse to be unable to earn sufficient income to meet his or her reasonable needs will justify an award of spousal maintenance. Because Castro was able to perform everyday functions, such as drive a car and have sexual relations with another man immediately after the parties separated, and became involved in a violent altercation with another man who hit her over the head with a gun, Romero argues that Castro cannot be described as having an incapacitating disability.

In *Pickens*, the Dallas Court of Appeals considered the issue of the "quantum of evidence required to prove incapacity in a spousal maintenance action." 62 S.W.3d at 215–16. The court rejected the argument that an incapacitating disability must be established through expert testimony and medical evidence and held that "[a]bsent a statutory requirement to the contrary, testimony on incapacity need not be limited to experts; a fact finder may reasonably infer incapacity from circumstantial evidence or the competent testimony of lay witnesses." *Id.* at 215. The court concluded that "the testimony of the injured party will support a finding of incapacity even if directly contradicted by expert medical testimony." *Id.* at 216.

The Fort Worth Court of Appeals, the court from which this case was transferred, has cited *Pickens* favorably for the proposition that an individual's incapacity may be established through the individual's testimony alone. *Brooks*, 257 S.W.3d at 425–26. In *Brooks*, the trial court awarded the wife spousal maintenance

7

based on her testimony that she suffered an incapacitating physical disability. *Id.* at 424. The wife testified that her health started deteriorating about three years before trial and that she had three discs in her back "that were out." *Id.* at 425. She also testified that she took epidural steroid injections every six months for about six weeks that affected her ability to work. *Id.* Additionally, the wife testified that, while she was being treated for her back, she had a bone density test performed that revealed osteoporosis, and that the osteoporosis prevented her from working because her bones were so brittle that she could break her back, leg, or foot by stepping wrong. *Id.* The husband challenged the award, arguing there was insufficient evidence of an incapacitating disability because the evidence consisted only of the wife's own testimony without any supporting medical evidence of her disability. *Id.* at 424–25. The court, citing *Pickens* and two cases from the Corpus Christi Court of Appeals favorably,[4] held there was sufficient evidence to support the trial court's conclusion that the wife suffered from an incapacitating disability. *Id.* at 426.

---

[4] *See Smith v. Smith*, 115 S.W.3d 303, 308–09 (Tex. App.—Corpus Christi 2003, no pet.) (relying on *Pickens* and holding that trial court did not abuse its discretion in awarding spousal maintenance based on husband's testimony that aneurysm left him incapacitated, despite wife's testimony that she did not think disability was incapacitating); *Lopez v. Lopez*, 55 S.W.3d 194, 199 (Tex. App.—Corpus Christi 2001, no pet.) (holding that trial court did not abuse its discretion in awarding spousal support for incapacitating disability—diabetes—based on wife's testimony even though husband testified he did not think wife's diabetes was incapacitating).

Like the wife in *Brooks*, Castro did not introduce any medical records into evidence and did not offer any expert testimony at trial. She did, however, testify that she was disabled after suffering a fall in 2016, which resulted in her being diagnosed with a TBI. Romero did not dispute her diagnosis. Instead, he testified about the accident and confirmed that Castro was in the hospital for several days as a result. Castro testified that she still suffers from memory loss, vision problems, and seizures, and that she takes several medications as a result of the accident. Finally, Castro testified that she receives Social Security disability benefits. Cummings confirmed that Castro still suffers from seizures and "tremendous headaches," and that she is not "back where [she] need[s] to be." Despite Romero's argument to the contrary, this is some evidence that the current symptoms of Castro's disability cause her to be incapacitated.

We acknowledge that there is some evidence that Castro can perform certain tasks or engage in certain activities despite her disability, including driving, reading, and engaging in sexual relations. This does not, however, mean that Castro's physical disability could not be "incapacitating," particularly in light of the evidence detailed above. *See, e.g.*, *Brooks*, 257 S.W.3d at 425–26 (holding there was sufficient evidence of wife's incapacitating disability even though husband did not think disability was incapacitating and wife was able to perform some tasks outside the home, including assisting elderly woman with running errands and going to doctor);

*see also Dunaway v. Dunaway*, No. 14-06-01042-CV, 2007 WL 3342020, at *6 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.) (recognizing there was evidence wife could cook, clean, drive, perform household chores, and otherwise support herself, but holding that trial court did not abuse its discretion in awarding spousal maintenance in light of other evidence wife had brain damage, attended special education classes, had deteriorating disc in lower back, suffered from seizures and depression, and took medication for both).

Finally, to the extent Romero argues that there is insufficient evidence connecting Castro's disability with her inability to work, we disagree. Romero notes that Cummings testified only that Castro was not hired for one job because the medications she takes caused her to fail a drug test, not that Castro *could not work* because of an incapacitating disability. While it is true that Cummings did not expressly testify that Castro was unable to work due to her disability, she did testify that Castro "can't get a job because nobody will hire [her] because of the medication . . . because [she] get[s] these tremendous headaches."

Further, Castro herself directly addressed her ability to obtain employment in her testimony. Castro explicitly testified that she is not yet to the point physically where she can get a job, and that she has not been cleared to return to work by her doctor. These facts are thus distinguishable from recent cases where the Fort Worth Court of Appeals has found insufficient evidence to warrant an award of spousal

10

maintenance due to a lack of connection between the spouse's disability and inability to obtain employment. *See J.F. v. J.F.*, No. 02-19-00029-CV, 2020 WL 4248681, at *4 (Tex. App.—Fort Worth July 23, 2020, pet. denied) (mem. op.) (concluding wife failed to introduce probative evidence to link disability with inability to work where there was "ample evidence" to the contrary—wife expressly denied she was disabled, testified that husband, not personality disorder, was what impeded her ability to work, and there was evidence that wife held multiple jobs while she had borderline personality disorder); *W.D. v. R.D.*, No. 02-18-00328-CV, 2019 WL 2635563, at *9 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (holding trial court did not abuse its discretion in refusing to award spousal maintenance because there was no evidence that wife's undiagnosed mental disorder kept her from finding employment and wife explicitly testified that she was able to work at time of trial).

After reviewing all the testimony presented at the hearing, we conclude that Castro presented probative evidence to support the trial court's award of spousal maintenance under Section 8.051(2)(A) of the Texas Family Code due to her incapacitating physical disability. Thus, the trial court did not abuse its discretion by awarding spousal maintenance.

We overrule Romero's sole issue.

**Conclusion**

We affirm the judgment of the trial court.


Amparo Guerra
Justice

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.